## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

_____

| | |
|---|---|
| In re:<br><br>**J & J Chemical, Inc.,**<br><br>        **Debtor.** | **Bankruptcy Case<br>No. 17-40037-JDP** |

_____

| | |
|---|---|
| **Wayne Klein,**<br><br>        **Plaintiff,**<br>vs.<br><br>**ODS Technologies, LP, d/b/a/<br>TVG Network**<br><br>        **Defendant.** | **Adversary Case<br>No. 18-08029-JDP** |

_____

## MEMORANDUM OF DECISION
_____

### *Introduction*

This is a decision exploring whether venue of a trustee's fraudulent

transfer action in the district where the bankruptcy case is pending against

MEMORANDUM OF DECISION - 1

an out-of-district defendant is proper.  While the amounts in controversy

in this contest are modest, the legal issue is a knotty one, dividing the

courts that have considered it, and requiring this lengthy decision.  After

reflection, the Court's solution to this venue contest is by no means a novel

one: the Court will apply what it perceives to be the plain meaning of the

venue statute as enacted by Congress.

### *Facts[1] and Procedural Status*

J & J Chemical, Inc. ("Debtor"), is an Idaho corporation doing

business supplying janitorial supplies to its Idaho customers.  On January

19, 2017, Debtor commenced a Chapter 11[2] case in this District.[3]  Bk. Dkt.

No. 1.  On June 21, 2017, the Court granted the United States Trustee's

---

[1]  In this context, the operative facts are those alleged in Plaintiff's complaint, Dkt. No. 1, as well as those offered by Defendant in the affidavit of Defendant's representative submitted in support of its motion to dismiss.  Dkt. No. 7-2.

[2]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–86.

[3]  *In re J & J Chemical, Inc.*, No. 17-40037-JDP (Bankr. D. Idaho) (docket citations designated as "Bk. Dkt.").

MEMORANDUM OF DECISION - 2

motion to appoint R. Wayne Klein ("Plaintiff") to serve as the Chapter 11

Trustee in the case.  Bk. Dkt. No. 90.  On November 15, 2017, Plaintiff filed

a Chapter 11 Plan of Reorganization, Dkt. No. 143, which was  confirmed

by this Court on February 26, 2018.  Dkt. No. 178.  That Plan named

Plaintiff as the plan administrator and granted him the authority to pursue

avoidance actions such as this one.  Dkt. No. 143 at 10.

ODS Technologies, LP ("Defendant") is a Delaware limited

partnership that operates an online horse race wagering service.  Dkt. 1 at

¶¶ 2, 9.  Defendant's corporate headquarters, and principal place of

business is in Los Angeles.  Dkt. No. 7-2 at 2.  On May 2, 2011, Idaho's

Secretary of State granted Defendant authority to conduct business in

Idaho under the name "TVG Network."  Dkt. 1 at ¶ 2; *see* Idaho Code

§§ 53-2-101 *et seq.* (repealed 2015).[4]

Between April 2013 and May 2016, Debtor's president and sole

owner, Jonathan Peirsol ("Peirsol"), on fifty-nine separate occasions,

---

[4] The current version of this statute is found at Idaho Code §§ 30-24-101 *et seq.*

MEMORANDUM OF DECISION - 3

transferred funds to Defendant from Debtor's Idaho bank account to Defendant to place bets on horse races.  Dkt. 1 at ¶¶ 6–8.  All told, Debtor transferred $5,200 in the two years, and $11,100 in the four years, prior to the filing of Debtor's bankruptcy petition.  *Id.* at ¶¶ 8, 11.  On August 9, 2018, Plaintiff commenced this adversary proceeding against Defendant seeking to avoid these alleged fraudulent transfers of cash made by Debtor to Defendant between April 2013 and May 2016, and to recover the value of those transfers for the benefit of the bankruptcy estate.  Dkt No. 1 at 8.

On October 4, 2018, Defendant filed a motion to dismiss Plaintiff's complaint for improper venue under Civil Rule 12(b)(3).[5]  Dkt. No. 7.  On October 18, 2018, Plaintiff objected to the motion to dismiss.  Dkt. No. 11.  Defendant replied to the objection on November 6, 2018.  Dkt. No. 13.  The parties offered oral arguments at a hearing on November 13, 2018, and the Court took the issues raised by the motion to dismiss under advisement.

---

[5] Civil Rule 12(b)(3) is made applicable to bankruptcy adversary proceedings by Rule 7012.

MEMORANDUM OF DECISION - 4

Dkt. No. 21.[6]

This Memorandum disposes of the motion.  Rules 7052; 9014.

### *Arguments*

In his complaint, Plaintiff seeks to avoid the transfers of Debtor's
funds to Defendant, and to recover them for distribution to the creditors
in this bankruptcy case.  Plaintiff alleges Debtor was insolvent at the time
of each of the transfers and that Debtor, as compared to Peirsol, received
less than reasonably equivalent value in exchange for the funds
transferred.  Dkt. 1 at ¶¶ 12, 13, 17, 18.  In Count I, Plaintiff seeks to avoid
the $5,200 in transfers made to Defendant in the two years prior to the
petition filing under § 548(a).  *Id.* at ¶¶ 8–14.  In Count II, Plaintiff invokes
§ 544(b) and Idaho Code §§ 55-913(1)(b) and 55-914 to avoid the $11,100
transferred to Defendant during the four years prior to filing.  *Id.* at
¶¶ 15–21.  Under both Counts, Plaintiff also seeks to recover the transfers

---

[6] At the hearing, the parties agreed that the Court has jurisdiction over this
action under 28 U.S.C. §§ 157(b)(1) and 1334(b), and that it is a "core
proceeding" for purposes of 28 U.S.C. § 157(b)(2)(A), (H), and (O); they also
expressly consented to the Court's entry of a final order disposing of the motion
to dismiss.

MEMORANDUM OF DECISION - 5

from Defendant as an initial transferee under § 550(a)(1).  *Id.* at ¶ 22.

Plaintiff alleges that venue of this adversary proceeding in the District of

Idaho is proper under 28 U.S.C. §§ 1408 and 1409.  *Id.* at ¶¶ 3–5.

Defendant's motion to dismiss under Civil Rule 12(b)(3) argues that

the District of Idaho is an improper venue for this action under 28 U.S.C.

§ 1409(b).  In relevant part, the venue statute provides:

> (a) Except as otherwise provided in subsections (b) and (d), a
> proceeding arising under title 11 or arising in or related to a
> case under title 11 may be commenced in the district court in
> which such case is pending.

> (b)  Except as provided in subsection (d) of this section, a
> trustee in a case under title 11 may commence a proceeding
> arising in or related to such a case to recover a money
> judgment of or property worth less than $1,300 or a consumer
> debt of less than $19,250, or a debt (excluding a consumer
> debt) against a noninsider of less than $12,850, only in the
> district court for the district in which the defendant resides.

Defendant contends that since Plaintiff seeks to recover less than $12,850,

this adversary proceeding must be prosecuted in the Central District of

California, the district where the Defendant "resides."  Dkt. No. 7-1 at 3.

Plaintiff challenges Defendant's position for three reasons.  Dkt. No.

MEMORANDUM OF DECISION - 6

11.  First, Plaintiff contends that 28 U.S.C. § 1409(a), not (b) controls,

because this action "arises under" title 11, whereas 28 U.S.C. § 1409(b)

requires venue in a defendant's home district only for actions "arising in"

or "related to" Title 11.  *Id.* at 2–7.

Second, even if the Court concludes that 28 U.S.C. § 1409(b) applies,

Plaintiff insists its requirements are met.  He alleges that this action is a

proceeding to recover a money judgment or property worth more than

$1,300, and it is not a proceeding to "recover a debt," so the $12,850

threshold in the venue statute for such proceedings does not apply to

Plaintiff's claim.  *Id.* at 7–8.

Finally, Plaintiff argues that even if the Court decides that the

$12,850 threshold for actions to recover a debt does apply to his claims

against Defendant, venue is still proper in this District because the

Defendant is a "resident" of Idaho under the definition found in another

federal venue statute, 28 U.S.C. § 1391.  *Id.*

In reply, Defendant addressed each of Plaintiff's objections to

dismissal.  Dkt. No. 13.  As to Plaintiff's first argument, Defendant

MEMORANDUM OF DECISION - 7

acknowledges that the words "arising under" do not appear in 28 U.S.C.

§ 1409(b), but, it posits, this was an inadvertent omission by Congress in

drafting the statute, and Congress did indeed intend actions "arising

under" title 11 be subject to the same limits on venue as those "arising in"

and "related to" title 11.  *Id.* at 3–5.  As to Plaintiff's second point,

Defendant contends this avoidance action seeks to "recover a debt," and

thus Plaintiff's claim of $11,100 claim does not satisfy the $12,850

threshold in 28 U.S.C. § 1409(b) to allow for venue here.  *Id.* at 6–7.

Finally, Defendant argues Plaintiff's third objection fails because

Defendant "resides" in the Central District of California, not the District of

Idaho.  *Id.* at 7–9.

### *Analysis and Disposition*

Put simply, the Court agrees with Plaintiff's positions in this contest

in all respects.  Thus, venue of this action is proper in this District, and

Defendant's motion to dismiss will be denied.  Here's why.

MEMORANDUM OF DECISION - 8

**A. Venue for Bankruptcy Proceedings Under 28 U.S.C. § 1409**

    1.    *The Venue Statute*

Plaintiff must establish that venue of this action in this District is

appropriate. *Ingalls v. Mobile Corral, Inc.*, No. CV04-295-N-EJL, 2005 WL

2333827, at *1 (Bankr. D. Idaho Sept. 21, 2005) (instructing that "[o]nce

challenged, the plaintiff bears the burden of proving both venue and

personal jurisdiction are proper."); *see also Piedmont Label Co. v. Sun Garden*

*Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1997) (holding that plaintiff has

burden of establishing venue in federal antitrust cases).

The general rule for venue in bankruptcy proceedings is supplied by

28 U.S.C. § 1409(a): except as provided in subsections (b), an adversary

proceeding asserting claims arising under title 11, or arising in or related to

a case under title 11, may be commenced in the district in which the subject

bankruptcy case is pending. In other words, subsection (a) applies to three

discrete types of bankruptcy proceedings: those (1) "arising under";

(2) "arising in"; or (3) "related to."

But the general rule for venue of bankruptcy proceedings is subject

MEMORANDUM OF DECISION - 9

to important exceptions which are at issue here.  Under 28 U.S.C.

§ 1409(b), an action must be pursued in the district where the defendant

resides if it is one  "arising in" or "related to" title 11, *and* is either one to

recover a money judgment or property worth less than $1,300, *or* if it seeks

to recover a non-consumer debt against non-insider less than $12,850.[7]

But while subsection (b) protects defendants from remote actions for cases

"arising in" or "related to" title 11, unlike subsection (a), it makes no

mention of cases "arising under" title 11.  In other words, though

subsection (b) makes it clear enough that Congress intended to create

special venue protections to prevent remote defendants from defending

"small" trustee claims against them in foreign fora for certain actions, it is

less clear exactly which kinds of lawsuits Congress intended to include

within the sweep of the 28 U.S.C. § 1409(b).[8]

---

[7] Section 1409(b) also applies to actions to recover "consumer debts" of less than $19,250, but Defendant has not argued that Plaintiff's claims fall into this category.

[8] The scope of subsection (b) is subject to one further condition:  it applies only to actions prosecuted by a "trustee."  Is Plaintiff a "trustee" for the purposes of  28 U.S.C. § 1409(b)?  Neither party addresses this potential issue in their

MEMORANDUM OF DECISION - 10

2.      *The Case Law*

The Bankruptcy Appellate Panel for the Ninth Circuit has succinctly

summarized the issue before this Court:

------------------------

submissions.

Plaintiff is the "plan administrator" under a confirmed Chapter 11 plan which authorizes him to pursue avoidance claims for the benefit of Debtor's creditors. This approach is sanctioned by § 1123(b)(3) which allows a plan to provide for "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of [avoidance claims]." The Ninth Circuit has held that "'it is a well-settled principle that avoidance powers may be assigned to someone other than the debtor or trustee pursuant to a plan of reorganization' under 11 U.S.C. § 1123(b)(3)(B)." *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774, 780–81 (9th Cir. 1999) (quoting *Winston & Strawn v. Kelly (In re Churchfield Mgmt. & Inv. Corp.)*, 122 B.R. 76, 81 (Bankr. N.D. Ill. 1990)). "In order for a 'representative of the estate' to pursue a 'claim or interest' they must prove (1) they have been appointed for such a purpose, and (2) they represent the estate." *In re Simplot*, #06-00002-TLM, 2007 WL 2479664, at *17 (Bankr. D. Idaho Aug. 28, 2007) (citing *In re Prof'l Inv. Props.*, 955 F.2d 623, 626 (9th Cir. 1992)). "The first element can be proved by Court approval of a plan that makes an express provision for such a representative. The latter determination is made on a case-by-case basis, the crucial inquiry being whether recovery by the appointed party would benefit the debtor's estate and its unsecured creditors." *Id.* (citing *In re Sweetwater*, 884 F.2d 1323, 1327 (10th Cir. 1989)).

While Plaintiff is not a case trustee, given his status and duties under the confirmed plan, Plaintiff seemingly qualifies as a "trustee-like" representative. Perhaps because of this, neither party has relied upon Plaintiff's technical, non-trustee status to navigate the venue limits in 28 U.S.C. § 1409(b). Since the parties have not embraced this issue, the Court therefore expresses no opinion on whether a chapter 11 plan administrator is subject to the 28 U.S.C. § 1409(b) venue limits.

MEMORANDUM OF DECISION - 11

> The question is whether the omission [of "arising under"
> from § 1409(b)] allows the broad meaning of "arising in" to
> encompass cases arising *under* title 11 in § 1409(b), or whether
> the omission was intended to impart to each of the terms a
> discrete technical meaning, so that the omission of "arising
> under" from the exception to the general rule was intended to
> create a particular legal effect: an exception to the exception
> thereby restoring home court advantage to the trustee for the
> undersize preference claim.

*Muskin, Inc. v. Strippit Inc. (In re Little Lake Indus., Inc.)*, 158 B.R. 478, 481

(9th Cir. BAP 1993).

In resolving this issue, a plain language interpretation of 28 U.S.C.

§ 1409(b) has led many courts to conclude that it applies only to claims

"arising in" and "related to" under title 11, but not to those "arising

under" title 11, such as avoidance and preference actions.  *See Redmond v.*

*Gulf City Body & Trailer Works, Inc. (In re Sunbridge Capital, Inc.)*, 454 B.R.

155 (Bankr. D. Kan. 2011); *Schwab v. Peddinghaus Corp. (In re Excel Storage*

*Prods, L.P.*, 458 B.R. 175 (Bankr. D. Pa. 2011); *Straffi v. Gilco World Wide*

*Mkts. (In re Bamboo Abbott, Inc.)*, 458 B.R. 701 (Bankr. D.N.J. 2011); *Moyer v.*

*Bank of Am. (In re Rosenberger)*, 400 B.R. 569 (Bankr. W.D. Mich. 2008);

*Ehrlich v. Am. Express Travel Related Servs. Co. (In re Guilmette)*, 202 B.R. 9

MEMORANDUM OF DECISION - 12

(Bankr. N.D.N.Y. 1996); *Van Huffel Tube Corp. v. A & G Indus. (In re Van Huffel Tube Corp.)*, 71 B.R. 155 (N.D. Ohio 1987).  Other courts, including the BAP, disagree, concluding that Congress unintentionally omitted "arising under" from subsection (b), and its actual intent was to create exceptions for cases "arising under" title 11 as well as those cases "arising in" or "related to" cases under title 11.  *See Little Lake Indus.*, 158 B.R. 478; *N1 Creditors Trust v. Crown Packaging Corp. (In re Nukote Int'l, Inc.)*, 457 B.R. 668 (M.D. Tenn. 2011); *Dynamerica Mfg., LLC, v. Johnson Oil Co., LLC (In re Dynamerica Mfg., LLC)*, No. 10-50759, 2010 WL 1930269 (Bankr. D. Del. May 10, 2010); *Miller v. Hirn (In re Raymond)*, No. 09-6177, 2009 WL 6498170 (Bankr. N.D. Ga. June 17, 2009).

Here, Defendant urges this Court to follow the line of cases holding that, though it did not expressly say so, Congress also intended 28 U.S.C. § 1409(b) to apply to claims "arising under" title 11.  Defendant asks the Court to adhere to the BAP's holding in *Little Lake Industries* that the terms "arising under" and "arising in" in 28 U.S.C. § 1409(b) were not meant to

MEMORANDUM OF DECISION - 13

be mutually exclusive, but were instead intended to be interchangeable.[9]

Thus, according to Defendant, for venue purposes at least, claims "arising

under" title 11 also "arise in" title 11.  Dkt. No. 13 at 5.

    While acknowledging its persuasive value, Plaintiff suggests that

the panel's holding in *Little Lake Industries* should not be followed.  In

Plaintiff's view, the terms "arising under," "arising in," and "related to"

are bankruptcy terms of art, each with discrete significance as used in

different contexts throughout the Bankruptcy Code.  Indeed, according to

the Ninth Circuit, proceedings "arising under" and "arising in" title 11

are:

---

[9] Defendant recognizes that a bankruptcy court is not bound to follow the decisions of the BAP, but urges that it should consider *Little Lake Industries* persuasive authority on this frontier bankruptcy issue.  Dkt. No. 13 at 5.  *See, e.g., Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 772 n.10 (explaining that BAP opinions are not binding within the Ninth Circuit, but noting the "importance of the BAP in providing 'guidance on frontier bankruptcy issues,'" and that BAP decisions are adopted where persuasive) (quoting *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (O'Scannlain, J., concurring specially) (9th Cir. 1990)); *see also Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F. 3d 775, 784 n.3 (9th Cir. 2007) ("We acknowledge decisions by the BAP are not binding on this Court. That does not mean, however, BAP decisions may not be persuasive and aid us in our reading of the Bankruptcy Code.").

MEMORANDUM OF DECISION - 14

> those proceedings that involve a cause of action created or
> determined by a statutory provision of title 11. . . . The
> meaning of "arising in" proceedings is less clear, but seems to
> be a reference to those "administrative" matters that arise
> only in bankruptcy cases . . . [and] are not based on any right
> expressly created by title 11, but nevertheless, would have no
> existence outside the bankruptcy.

*Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431, 1435 (9th Cir.

1995) (quoting *In re Wood*, 825 F.2d 90, 96–97 (5th Cir. 1987)).  These two

terms are, in turn, each distinct from claims or issues "related to" title 11, a

broader term that includes actions that "could conceivably have any effect

on the estate being administered in bankruptcy."  *Fietz v. Great W. Sav. (In

re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988) (quoting *Pacor, Inc. v. Higgins*, 743

F.2d 984, 994 (3d Cir. 1984)).[10]  Plaintiff also notes that preserving the

distinction between the three terms of art found in the venue statute is

consonant with the disjunctive use of "or" in 28 U.S.C. § 1409(a).  Dkt. No.

---

[10] The Court recognizes that *Harris Pine Mills*, *Wood*, *Fietz*, and *Pacor*
discussed the definitions of "arising under," "arising in," and "related to" within
the context of determining the bankruptcy court's jurisdiction and powers under
28 U.S.C. § 1334 and § 157.  Even so, the insights provided in these decisions are
also relevant to venue contests under 28 U.S.C. §1409 which, like the jurisdiction
cases, serve to define the contours of individual bankruptcy courts' authority to
hear cases and proceedings.

MEMORANDUM OF DECISION - 15

11 at 5.

### 3. *Rules of Statutory Construction*

While persuasive, the BAP's interpretation of 28 U.S.C. § 1409 in

*Little Lake Industries* that Congress inadvertently omitted "arising in"

claims from subsection (b) must necessarily be considered in view of the

Supreme Court's decision eleven years later in *Lamie v. United States*

*Trustee*, 540 U.S. 526 (2004).  In *Lamie*, the petitioner argued that when

Congress adopted an amended version of § 327(a), it inadvertently

omitted language that had been included in the prior version of the

statute.  *Lamie*, 540 U.S. at 533.  Petitioner urged that the amended statute

was therefore rendered ambiguous, requiring the Supreme Court to

consult sources beyond the statutory text, like legislative history, to

discern Congress' true purpose in enacting the modified version of the

statute.  *Id.*  The Supreme Court declined the invitation to supplement the

language of the amended statute to address what was arguably an

inadvertent error in drafting, explaining "[i]t is well established that

'when the statute's language is plain, the sole function of the courts—at

MEMORANDUM OF DECISION - 16

least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Id.* at 534 (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000) (internal citations omitted)).  Moreover, the Supreme Court has also instructed that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *Russello v. United States*, 464 U.S. 16, 23 (1983).

Put simply, then, under the rules of statutory interpretation mandated by the Supreme Court, in the absence of absurd results, bankruptcy courts must defer to the plain language of statutes enacted by Congress.  And these instructions control even where Congress makes a mistake.  *Lamie*, 540 U.S. at 542. (quoting *United States v. Granderson*, 511 U.S. 39, 68 (1994) (concurring opinion, noting that "If Congress enacted into law something different from what it intended, then it should amend the statute to conform to its intent. 'It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think

MEMORANDUM OF DECISION - 17

. . . is the preferred result.'").

Even were *Little Lake Industries* controlling, this Court is not bound by Ninth Circuit precedent where there has been an intervening change in controlling law. *See United States v. Gonzalez-Zotelo*, 556 F.3d 736, 740 (9th Cir. 2009) (explaining courts must follow a prior circuit decision unless a subsequent decision by a relevant court of last resort "either effectively overrules the decision in a case 'closely on point' or undercuts the reasoning underlying the circuit precedent"); *accord Wilkins v. Menchaca (In re Wilkins*, 587 B.R. 97, 105 (9th Cir. BAP 2018). For these reasons, despite the BAP's holding in *Little Lake Industries*, this Court's task is to determine whether the current version of § 1409(b) is ambiguous, and whether application of the statute as written yields absurd results.

### 4. Application of Rules

The Court concludes that the language of 28 U.S.C. § 1409(a) and (b) is unambiguous. Subsection (a) states that, except as provided in subsection (b), a bankruptcy adversary proceeding asserting claims arising under the Code may be commenced in the district where the

MEMORANDUM OF DECISION - 18

bankruptcy case is pending.  Subsection (b), in turn, provides that claims

arising in or related to a case under title 11 must be prosecuted in the

district where the defendant resides, but only if the amount sought does

not exceed certain monetary thresholds.  Specifically, actions to recover (1)

a money judgment of or property worth less than $1,300, (2) consumer

debts of less than $19,250, and (3) a debt against a non-insider of less than

$12,850, must all be prosecuted in the district where the defendant resides.

28 U.S.C. § 1409(b).  This Court need not add or subtract language from

these statutes to determine they unambiguously limit "home court"

actions to those specifically described in subsection (b).  Thus, whereas the

*Little Lake Industries* panel resorted to legislative history to determine the

applicability of § 1409(b) for proceedings arising under title 11, given the

lessons of *Lamie*, this Court need not engage in a similar inquiry into

Congressional intent in this case.  *See, e.g.*, *In re Wages*, 479 B.R. 575, 582

(Bankr. D. Idaho 2012) ("Here, the court concludes there is no need to

resort to legislative history, particularly not at the expense of the Code's

language . . . because [it] is plain and the disposition required by the text is

MEMORANDUM OF DECISION - 19

not absurd.") (citing *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 236 n.3 (2010)).

The parties agree in this action that Plaintiff's fraudulent transfer avoidance claims against Defendant are under §§ 544(b) and 548, and as such, these are proceedings "arising under" title 11 because those code provisions expressly create Plaintiff's rights under the Code. Dkt. No. 21.

Defendant insists Congress inadvertently omitted "arising under" from 28 U.S.C. § 1409(b), and urges the Court to construe the phrase "arising in" as including claims "arising under" title 11. But Defendant's argument is exactly the approach disapproved by the Supreme Court in *Lamie:* that this Court must not attempt to discern Congress's actual intent in drafting 28 U.S.C. § 1409(b) when the statute is unambiguous. Put another way, while the Defendant might be correct that Congress mistakenly failed to include the phrase "arising under" in 28 U.S.C. § 1409(b), this Court may not read "arising under" into the statute where

MEMORANDUM OF DECISION - 20

Congress' enactment omitted it.[11]

This Court's obedience to the language in the venue statutes is further supported by the Supreme Court's decision in *Russello.*  Section 1409 of Title 28 has five subsections, labeled (a) through (e).  Subsections (a), (d), and (e) refer to "proceeding[s] arising under title 11 or arising in or related to case[s] under title 11."  Subsections (b) and (c), however, refer only to "proceeding[s] arising in or related to" proceedings in title 11 cases.  Under *Russello*, where the same Congressional Act includes language in some subsections, but omits it from others, this Court should presume Congress acted intentionally, not inadvertently, in the disparate

---

[11]  One commentator's thoughts also bear noting:

> Congress has had three opportunities to include proceedings arising under Title 11 in § 1409(b) (and its predecessor, § 1473(b)), but has failed to do so.  Given the other changes made to the venue provisions over the years, a court today may be hard-pressed to find that Congress has not intentionally excluded proceedings arising under Title 11, including preferences, from the operation of subsection (b).

Byron C. Starcher, *Second Thoughts on "Home Court Advantage" for Small-Dollar Preference Defendants*, 25-MAR Am. Bankr. Inst. J. 10, 51 (2006).

MEMORANDUM OF DECISION - 21

inclusion or exclusion of such language.  *See also, e.g., Spokane Law Enf't Fed. Credit Union v. Barker (In re Barker)*, 839 F.3d 1189, 1194–95 (9th Cir. 2016) (explaining that omission of language from a Chapter 13 Code provision was presumed to be intentional where such language was included in an analogous Chapter 11 section); *In re Cole*, 226 B.R. 647, 653–54 (9th Cir. BAP 1998) (holding that Congress' decision not to authorize prepetition waivers of discharge, while authorizing postpetition waivers under § 524(c), was intentional).

Defendant contends that reading 28 U.S.C. § 1409(b) to exclude claims  "arising under" title 11 yields absurd results in view of 28 U.S.C. § 1409(c).  28 U.S.C. § 1409(c) contains the same prefatory language as 28 U.S.C. § 1409(b)—it applies to actions "arising in" or "related to" cases under title 11, but does not mention cases "arising under" title 11. However, 28 U.S.C. § 1409(c) also applies to claims "under section 541 or 544(b) of title 11."  Defendant argues cases under §§ 541 and 544(b) are cases "arising under" title 11, and thus, it is absurd to think Congress intentionally omitted "arising under" from subsection (c) because that

MEMORANDUM OF DECISION - 22

subsection explicitly refers to certain types of actions arising under title 11.

Defendant insists that if this Court interprets subsection (b) to exclude

"arising under" claims, it necessarily must interpret subsection (c) the

same way, which would lead to absurd results.

Defendant's argument is not lost on the Court; indeed, this logic

was also deployed in *Little Lake Industries*.  But even assuming it would be

"absurd" to interpret similar provisions in subsections (b) and (c)

differently, that a plain language interpretation of 28 U.S.C. § 1409(b)

might have corollary consequences for the interpretation of another

subsection does not necessarily lead to absurd results in the application of

the Code writ large.  Rather, the relationship of the language of the two

sections, at worst, may lead to a narrower application of 28 U.S.C. §

1409(c) in some cases "arising under" title 11.  Moreover, the application

and construction of 28 U.S.C. § 1409(c) is not before the Court.

Guided by the teachings of the Supreme Court, the Court concludes

that the plain language of 28 U.S.C. § 1409(b) does not lead to absurd

results such that legislative history should be consulted to discern

MEMORANDUM OF DECISION - 23

Congress' intent.  Instead, the Court concludes that venue of this avoidance action under §§ 544(b) and 548 is not controlled by 28 U.S.C. § 1409(b), and venue is proper in the District of Idaho under 28 U.S.C. § 1409(a).  The claims made in this is action arise under title 11, while 28 U.S.C. § 1409(b)'s recovery thresholds only apply to claims "arising in" or "related to" title 11.  The venue statute is unambiguous and such an interpretation does not lead to absurd results. Accordingly, the Court will not consider legislative history to discern Congress' intent in enacting 28 U.S.C. § 1409(b).

## B. Recovery of Money or Property vs. Recovery of a Debt

Because they may also control the outcome of this issue, the parties' other arguments regarding venue of this adversary proceeding also deserve consideration by the Court.

Plaintiff argues that, even if 28 U.S.C. § 1409(b) applies to this action, his claims against Defendant are not subject to the monetary limits for actions which must be prosecuted in Defendant's "home court."  Dkt. No. 11 at 7–8.  To the contrary, Defendant argues Plaintiff seeks to

MEMORANDUM OF DECISION - 24

"recover a debt" in the form of a money judgment against Defendant for the $11,100 it allegedly received from Debtor. Dkt. No. 13 at 6. Defendant notes the $12,850 threshold for non-insider debt recoveries has been applied in § 547 preference avoidance actions in *Nukote* and *Dynamerica*, and urges this Court to do the same here concerning Plaintiff's transfer avoidance action under § 548. *Id.* at 6–7.

Plaintiff disagrees, arguing this is a proceeding to "recover money or property," not an action to "recover a debt", thus triggering 28 U.S.C. § 1409(b)'s $1,300 threshold, which is met in this case. Dkt. No. 11 at 7–8. While Plaintiff is unable to identify any cases in which courts have found the $1,300 threshold for an action to recover money or property is appropriate in cases under §§ 544(b) and 548, Plaintiff urges the Court to consider relevant statutory text. Indeed, §§ 544(b) and 548, by their very terms, refer to the trustee's powers to avoid a "transfer of an interest of the debtor in property[,]" but fail to mention "debts." Furthermore, § 550(a) explicitly refers to § 544 and § 548 actions, clarifying "the trustee may recover, for the benefit of the estate, the property transferred, or if the

MEMORANDUM OF DECISION - 25

court so orders, the value of such property. . . ."  Again, § 550(a) does not

mention recovery of "debts."

There is limited case law discussing how to apply 28 U.S.C.

§ 1409(b)'s  treatment of claims to recover "money or property," as

opposed to claims to recover "debts."[12]  Defendant correctly notes that the

courts in *Nukote* and *Dynamerica* applied the higher threshold, $12,850, in

preference actions.  However, neither court discussed the applicability of

the $1,300 and $12,850 thresholds or explicitly addressed which threshold

it applied, and why.  In *Nukote*, the court decided that the higher threshold

for recovery of debts applied, but did not analyze its choice of thresholds

because "[n]o party claims that this preference action seeks to recover 'a

money judgment . . . or property' in contrast to 'a debt' for 28 U.S.C.

§ 1409(b) purposes.  This distinction in § 1409(b) is obscure."  *In re Nukote*

*Int'l, Inc.*, 457 at 669 n.3.

---

[12] One commentator discussed the issue, failing to reach a definitive
conclusion on how to interpret § 1409(b)'s "money judgment or property" vs.
"debt" conundrum.  *See Second Thoughts on "Home Court Advantage" for Small-
Dollar Preference Defendants*, *supra*, n. 11, at 51–52.

MEMORANDUM OF DECISION - 26

Similarly, in *Dynamerica*, the court did not explain why it chose the threshold it did, and the only way to determine the higher threshold for actions to recover "a debt" was applied by the court is to compare the amount in controversy with the outcome in the case. *In re Dynamerica Mfg., LLC*, 2010 WL 1930269.  In that case, the trustee's action sought $6,599.85 and the motion to dismiss was granted, suggesting the higher threshold was applied and not met. *Id.* at *1, *3.

Given the terse treatment of the issue in *Nukote* and *Dynamerica*, this Court is unpersuaded that it should apply the $12,850 limit in this case. Plaintiff seeks a recovery of property that was transferred by Debtor to Defendant during the four years leading up to the petition filing.  In this case, the nature of the transferred property was cash.  Plaintiff invokes §§ 544 and 548 of the Code, both of which allow avoidance of a "transfer of an interest of the debtor in property."  Under § 550(a), Plaintiff seeks to recover "the property transferred" or "the value of such property."  A practical reading of these Code sections indicates that Plaintiff's claims to avoid the transfers to Defendant are, in real effect, actions to recover

MEMORANDUM OF DECISION - 27

money judgments or property for the purposes of 28 U.S.C. § 1409(b).

Accordingly, the $1,300 threshold for actions "to recover money judgments or property" applies in this case and is satisfied by the amount pled in Plaintiff's complaint. The $12,850 monetary threshold for actions against a non-insider to recover a "debt" does not apply.[13] Thus, even if 28 U.S.C. § 1409(b) applies in this case, venue for the Plaintiff's claim would still be proper in the District of Idaho since the $1,300 monetary threshold is met.

## C. Defendant's "Residence" for Venue Purposes

Lastly, the parties dispute where Defendant resides for venue purposes. Defendant argues it is a resident of the Central District of California, where its headquarters are located. Plaintiff disagrees, contending that even if the Court decides that 28 U.S.C. § 1409(b) applies, and concludes that the $12,850 threshold applicable to actions to recover

---

[13] Under the Code, "debt means liability on a claim." § 101(12). A "claim", in the context of a bankruptcy case, is a right to payment. § 101(5). Defendant's arguments stretch these definitions when it characterizes Plaintiff's avoidance action as one to collect a debt from Defendant.

MEMORANDUM OF DECISION - 28

debts applies and is not met, venue is still proper because Defendant is a resident of Idaho.

If the monetary thresholds of 28 U.S.C. § 1409(b) are not met, a proceeding may only be commenced in the district "in which the defendant resides." 28 U.S.C. § 1409(b). Under 28 U.S.C. § 1391(c)(2), residency for venue purposes for defendants lies "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the action in question. . . ." Rule 7004(a) provides for nationwide service of process in adversary proceedings; however, under subsection (f), the exercise of personal jurisdiction over a defendant by a bankruptcy court must be consistent with the requirements of the U.S. Constitution.

Here, from the docket , it appears Defendant was properly served with process via first class mail, postage prepaid, addressed to an agent authorized by appointment or by law to receive service of process, thus satisfying the procedural requirements of Civil Rule 4(h). Dkt. No. 6. But are the constitutional requirements for this Court's exercise of personal

MEMORANDUM OF DECISION - 29

jurisdiction over the Defendant in Idaho satisfied in this action?

Any inquiry into the constitutional requirements of personal

jurisdiction starts with *International Shoe*, wherein the Supreme Court held:

> [D]ue process requires only that in order to subject a
> defendant to a judgment in personam, if he be not present
> within the territory of the forum, he have certain minimum
> contacts with it such that the maintenance of the suit does not
> offend "traditional notions of fair play and substantial
> justice."

*International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting

*Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  The Ninth Circuit uses a three-

part test to decide whether a court may exercise specific jurisdiction over a

nonresident defendant:

> (1) The nonresident defendant must do some act or
> consummate some transaction with the forum or perform
> some act by which he purposefully avails himself of the
> privilege of conducting activities in the forum, thereby
> invoking the benefits and protections[;] (2) [t]he claim must be
> one which arises out of or results from the defendant's forum-
> related activities[; and] (3) [e]xercise of jurisdiction must be
> reasonable.

*Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (quoting *Omeluk v.*

*Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995)).  The party

MEMORANDUM OF DECISION - 30

asserting personal jurisdiction must establish the first two elements of this

test; if successful, the burden then shifts to the party opposing personal

jurisdiction to make a "compelling case" that the exercise of jurisdiction is

unreasonable. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076

(9th Cir. 2011) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78

(1985)).

Courts examining the first prong of this test as applied to Internet

websites "have looked to the 'level of interactivity and commercial nature

of the exchange of information that occurs on the Web site' to determine if

sufficient contacts exist to warrant the exercise of jurisdiction." *Cybersell,*

*Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997) (quoting *Zippo Mfg.*

*Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997)). While

mere maintenance of a passive website is insufficient to confer personal

jurisdiction, maintenance of such a site "in conjunction with 'something

more'—conduct directly targeting the forum—is sufficient to confer

personal jurisdiction." *Brayton Purcell LLP v. Recordon & Recordon*, 606

F.3d 1124, 1129 (9th Cir. 2010) (quoting *Rio Props. v. Rio Int'l Interlink*, 284

MEMORANDUM OF DECISION - 31

F.3d 1007, 1020 (9th Cir. 2002)).

Next, courts use a "'but for' test to determine whether a particular claim rises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction." *Ballard*, 65 F.3d at 1500. As to the third prong of the test, courts presume an otherwise valid of exercise of jurisdiction is reasonable. *Id.*

Plaintiff bears the burden of demonstrating that Defendant's contacts with Idaho were sufficient so as to allow the Court to exercise personal jurisdiction over the Defendant. *Id.* at 1498. The material facts submitted to the Court bearing on the personal jurisdiction determination in this case are limited. Defendant apparently acknowledges that it registered to do business with the Secretary of State in Idaho in 2011. Dkt. No. 1 at 4. Defendant's submissions represent that it operates an online horse race betting website which can be accessed from those in Idaho, and that it accepts wagers from Idaho residents. Defendant also acknowledges that it received payments from Peirsol to place wagers. In addition, the complaint alleges that it was the Debtor's funds that Peirsol used to make

MEMORANDUM OF DECISION - 32

bets using Defendant's website.

As to the first prong of the Ninth Circuit test, Defendant operated an active website capable of consummating transactions with Idaho citizens. Indeed, it is alleged that on fifty-nine occasions, such transactions were consummated between Defendant and Peirsol via the website, using funds of the Debtor, an Idaho corporation, to place those bets. Furthermore, Defendant did "something more" when it registered as a limited partnership with Idaho's Secretary of State in 2011, enabling it to lawfully conduct business in Idaho. Idaho Code § 30-24-111 (formerly Idaho Code § 53-2-105) provides: "A limited partnership has the capacity to sue and be sued in its own name and the power to do all things necessary or convenient to carry on its activities and affairs." By registering under this Idaho Code provision, Defendant must have contemplated it would conduct business in the State of Idaho through its website. Inherent in registration is the notion that Defendant could "sue or be sued" in Idaho. Put another way, its registration under the Idaho Uniform Limited Partnership Act demonstrates it did "something more"

MEMORANDUM OF DECISION - 33

such that it purposefully availed itself of the privilege of conducting

business in Idaho.

Second, but for Defendant's website, the claims in this case would

not exist.  The claims arose from Defendant's Idaho-related activity of

maintaining an active website capable of funding accounts to place horse-

racing bets from Idaho residents.  Debtor's funds were transferred to

Defendant from an Idaho bank account and used to place bets, and

Plaintiff now seeks to avoid the transfers that funded Peirsol's wagering

activities.  And, third, an exercise of personal jurisdiction over Defendant

is reasonable because Ninth Circuit courts presume the reasonableness of

an otherwise valid exercise of jurisdiction, and here, Defendant failed to

make a compelling case that exercise of jurisdiction was unreasonable.

Since all three prongs of the Ninth Circuit's test are met, Defendant

is subject to personal jurisdiction in Idaho.  Since Defendant is subject to

personal jurisdiction in Idaho, even if the Court applied 28 U.S.C. §

1409(b) to this case, venue would still be proper in the District of Idaho

because Defendant is a resident of Idaho as provided in 28 U.S.C. § 1391.

MEMORANDUM OF DECISION - 34

///

///

///

///

## *Conclusion*

For these reasons, Defendant's motion to dismiss for improper

venue will be denied.  A separate order will be entered.

Dated:  January 11, 2019

_____

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 35